## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

        **Plaintiff,**

        **v.**                    **Case No. 07-20051-JWL**

**John D. Troxel,**

        **Defendant.**

_____

## MEMORANDUM & ORDER

Defendant John Troxel is charged with three counts of being an unlawful user of a controlled substance who possessed firearms in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). (doc. 18).  This case arises out of a domestic dispute between Mr. Troxel and his wife, Norma Troxel. Officers arrived at the residence in response to Ms. Troxel's call on July 28, 2006. Ms. Troxel gave them consent to search for Mr. Troxel in the home. During the search, the officers found narcotics and drug paraphernalia but did not locate Mr. Troxel. The officers returned on July 29, 2006, again in response to Ms. Troxel's request.  The officers located Mr. Troxel lying on a bed and arrested him.  They requested and obtained a state search warrant to search for marijuana, methamphetamine, and drug paraphernalia; they executed the warrant that same day, finding a tin can with marijuana seeds and a marijuana smoking device.  Federal agents then received a federal

search warrant on August 2, 2006.  They executed it and seized numerous firearms from the Troxels' residence.

On March 17, 2008, this court held a hearing on Mr. Troxel's Motion to Suppress ("Motion"), which sought suppression of evidence obtained during all the searches and letters between Mr. and Ms. Troxel. (doc. 14).  On April 17, 2008, the court issued a Memorandum and Order, denying in part Mr. Troxel's Motion and ordering supplemental briefing on a number of remaining issues.  *United States v. Troxel*, -- F.Supp.2d --, 2008 WL 1776585 (D. Kan. Apr. 17, 2008); (doc. 29).  The court previously ruled that items found in plain view on a work bench in the "gun room" during the initial search for Mr. Troxel shall not be suppressed, but officers illegally seized the items found inside a cooler in the same room.  As discussed below, the court now GRANTS in part and DENIES in part Mr. Troxel's Motion to Suppress as to the remaining items seized.  The court adopts its findings of fact from the previous Memorandum and Order (doc. 29) and includes within the Discussion below any other findings of fact relevant to the issues presently before the court.

## DISCUSSION

I.      **The inevitable discovery doctrine does not apply to the items found in the cooler.**

Evidence obtained through an illegal seizure is normally suppressed based on the exclusionary rule, but the inevitable discovery doctrine "permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (quotations omitted).

"The government possesses the burden of proving by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." *Id.*

Officers seized drugs and drug paraphernalia from a closed cooler inside the "gun room." Ms. Troxel gave her consent to search the room. As discussed in the previous Memorandum and Order, Ms. Troxel did not have authority to consent to the search of the "gun room." The seizure of items in the cooler could not be justified on the exigent circumstances doctrine (as the items found in plain view were) because Mr. Troxel, as the threat justifying the exigent circumstances, could not possibly have been found inside the cooler.[1] The court, therefore, held that officers illegally seized the items.

The Government contends that the officers had probable cause to procure a search warrant at the time they illegally seized the items. The Government may not rely only on the existence of probable cause. The court must consider several factors when evaluating whether the inevitable discovery doctrine should apply in a warrantless search situation.

> [A] court may apply the inevitable discovery exception only when it has a high level of confidence that the warrant in fact would have been issued and that the specific evidence in question would have been obtained by lawful means. Inevitable discovery analysis thus requires the court to examine each of the contingencies involved that would have had to have been resolved favorably to the government in order for the evidence to have

---

[1] On page 20 of the previous Memorandum and Order, the word "not" was inadvertently left out of the following sentence: "Second, the seizure of the items found while searching areas in which Mr. Troxel could be hiding, including those found in the cooler, cannot be justified on an exigent circumstances basis." As indicated by the court's reasoning and conclusion, the sentence should read: "Second, the seizure of the items found while searching areas in which Mr. Troxel could *not* be hiding, including those found in the cooler, cannot be justified on an exigent circumstances basis." (doc. 29, at 20); *Troxel*, 2008 WL 1776585, at *10.

been discovered legally and to assess the probability of the contingencies having occurred. In warrantless search questions, the process requires analysis of the factors described by the court in *Cabassa*. The more contingencies there are, and the lower the probability that each would have been resolved in the government's favor, the lower the probability that the evidence would have been found by lawful means.

*Souza*, 223 F.3d at 1205. The "*Cabassa* factors" that the court must assess in evaluating whether, in a warrantless search situation, the evidence would have been inevitably discovered are as follows:

1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search; 2) the strength of the showing of probable cause at the time the search occurred; 3) whether a warrant ultimately was obtained, albeit after the illegal entry; and 4) evidence that law enforcement agents "jumped the gun" because they lacked confidence in their showing of probable cause and wanted to force the issue by creating a fait accompli.

*Cunningham*, 413 F.3d at 1203-04 (quoting *United States v. Souza*, 223 F.3d 1197, 1204-05 (10th Cir. 2000)).

As to the first factor, the officers had not even started the warrant process at the time the illegal search was conducted on July 28, 2006.  In fact, a search warrant was not applied for or obtained until July 29, 2006, after a complete search of the house including the "gun room" had been conducted the previous day.  This weighs against the Government's use of the inevitable discovery doctrine.

The second factor is the strongest one in favor of the Government.  There was a strong showing of probable cause once the syringes and dug out (used to carry and conceal marijuana) that smelled of marijuana were found in plain view, in light of Ms. Troxel's statement that Mr. Troxel had been up for four or five days straight on some

kind of drug and the destruction inside the home. Interestingly, however, only parts of this information were included in the affidavit for the state search warrant.

The third factor, whether the search warrant was actually obtained, cannot be viewed in favor of the Government.[2] First, the state search warrant was obtained the following day, but not independent of the illegal search. The illegally seized evidence, such as the methamphetamine, was a partial basis for that search warrant. Unconstitutionally obtained material cannot support a probable cause determination for the issuance of a search warrant. *United States v. Scales*, 903 F.2d 765 (10th Cir. 1990).

More importantly, the state search warrant is invalid, as subsequently discussed in Part II. There were several false statements and material omissions included in the affidavit to get the search warrant. The court finds that where a search warrant was obtained based in part on the illegally seized evidence (the same evidence that the Government urges should not be suppressed under the inevitable discovery doctrine), and where the state search warrant is invalid altogether, it cannot support a showing that a search warrant would have been or was obtained despite the illegal search. This factor weighs against the Government.

Last, it seems that officers relied on the consent because they thought Ms. Troxel had the authority to consent, not necessarily because they meant to "jump the gun." The officer's reasoning for searching, however, was based on a mistake of law. The officer

---

[2] The court does not consider the federal search warrant obtained on August 2, 2006, because the government did not make this argument and sufficient time had passed such that it is not relevant.

assumed that the husband-wife relationship was enough to validate the consent. This was not a case where officers misinterpreted the facts and had their misinterpretation been correct, they would have been able to legally search. Instead, the officers knew of the facts, such as that Mr. Troxel forbade Ms. Troxel from entering the room, but the officer assumed that the law was different than it was. No mistake of law, as opposed to a mistake of fact, can be reasonable or form the basis for probable cause even if that mistake of law was in good faith. *United States v. Salinas-Cano*, 959 F.2d 861, 865-66 (10th Cir. 1992); *see also United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005) ("[F]ailure to understand the law by the very person charged with enforcing it is *not* objectively reasonable."). This fourth factor cannot be said to be in favor of the Government when a mistake of law was the cause of the illegal search. Because the court also does not find that the officers acted in bad faith in proceeding with the search, however, the court finds that this factor is neutral, not weighing heavily in the favor of either party.

Based on a balancing of these factors, the court finds that it does not have "a high level of confidence that the warrant in fact would have issued." *See Souza*, 223 F.3d at 1205. It appears that the Government relies on the fact that at the time the search of the cooler occurred, the officers had probable cause. In light of the Tenth Circuit's strict standard for inevitable discovery in this context, however, this is not enough. *See United States v. Moore*, 37 Fed. Appx. 963, 2002 WL 1335594 (10th Cir. Jun. 19, 2002) (discussing that *Souza* and other cases emphasize that "probable cause alone will not excuse the absence of a warrant otherwise required" in cases in which "obtaining a

warrant was the only way the police could have legally opened the package"); s*ee also United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995) ("[W]hat makes a discovery 'inevitable' is not probable cause alone . . . but probable cause plus a chain of events that would have led to a warrant independent of the search.").   The Tenth Circuit is "very reluctant to apply the inevitable discovery exception in situations where the government fails to obtain a search warrant and no exception to the warrant requirement exists." *United States v. Souza*, 223 F.3d 1197, 1206 (10th Cir. 2000) (concluding that the doctrine should apply in the unique situation, relying heavily on the fact that the police had taken steps to obtain a warrant at the time of the premature, illegal search).   The Tenth Circuit "more typically and readily appl[ies] the inevitable discovery exception in situations where some exception to the warrant requirement would have inevitably led to discovery of the evidence." *United States v. Moore*, 37 Fed. Appx. 963, 968 (10th Cir. 2002).   Here, there was no exception to the warrant requirement that would have inevitably led officers to the discovery of the items in the cooler.

Based on the balancing of the *Cabassa* factors, combined with the fact that no exception to the warrant requirement applied to these items, the court finds that the items must be suppressed. The court grants the Motion to Suppress as to the evidence found in the cooler on July 28, 2006, including a glass pipe with a piece of cotton and some residue on it, a cigar container with two syringes in it, rolling papers, a rolling machine, and a bag of green vegetation.   These were identified as Exhibits 8 through 13 at the suppression hearing.

II.     **The state search warrant is invalid.**

   a.  **When a challenge is made to the truth of the statements included in a warrant, the *Franks v. Delaware* standard applies.**

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit. Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause.  This prohibition likewise applies to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause." *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990)).  Probable cause for a warrant exists only when "[a]n affidavit in support of a search warrant . . . contain[s] facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

When making a *Franks* challenge, the defendant has the burden to establish by a preponderance of the evidence "that the false statement was included in the affidavit by the affiant 'knowingly and intentionally, or with reckless disregard for the truth.'" *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing *Franks*, 438 U.S. at 155-56).  "[T]he government [is] accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon

by the affiant in making the affidavit." *Id.* The defendant must then also prove that "the false statement was necessary to the finding of probable cause." *Id.* (quotations omitted). If he proves both, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*[3]

### b. The affidavit contains affirmative misstatements and omissions.

The affidavit as presented to the state court judge and as an exhibit at the Motion to Suppress hearing before this court reads as follows:

> On 07-28-2006 Deputy's [*sic*] responded to a domestic call at 18084 NW 2500 RD Williamsburg[,] KS 66093. Female subject reported that her husband John Troxel had tore [*sic*] up the house as a result of an argument. Female subject Norma Troxel also reported John Troxel hit her in the head with object. Officers asked consent to search and did a walk through. Officers found marijuana, methamphetamine and drug paraphernalia in plain sight. John Troxel had left the residence before officers arrived. Officers went back to Troxels['] tonight. Norma Troxel came out [and] told officers he is in there tearing up the house. John Troxel is in custody.

---

[3] "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an *offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *See Franks v. Delaware*, 438 U.S. at 171 (emphasis added). Mr. Troxel did not submit an affidavit or the like as an "offer of proof" prior to the hearing. Within the context of his Motion to Suppress, however, he points out specific portions of the affidavit and provided a statement of supporting reasons as to how those statements were false. Additionally, at the hearing Mr. Troxel's counsel elicited sworn testimony of the officers through cross-examination of Government witnesses. The Government did not raise this issue, and the court finds that in light of the detailed Motion and testimony from the hearing, the failure to submit sworn statements simultaneously with the Motion is not a bar to Mr. Troxel's claim. *See generally United States v. Biggs*, 2006 WL 1582023 (D. Utah June 6, 2006) (allowing defendant chance to correct failure to submit an offer of proof, giving defendant twenty days to do so).

Officers only did a walk through search on 07-28-06.  Officer would like to do a complete search now.

The court finds that the following crossed out portions of the affidavit are false statements, and the underlined statements are omissions.

On 07-28-2006 Deputy's [*sic*] responded to a domestic call at ~~18084~~ 14084 NW 2500 RD Williamsburg[,] KS 66093.  Female subject reported that her husband John Troxel had tore [*sic*] up the house as a result of an argument.  Female subject Norma Troxel also reported John Troxel hit her in the head with object.  Officers asked consent to search and did ~~a walk through~~ <u>a complete search of the residence</u>.  Officers found marijuana~~, methamphetamine~~ and drug paraphernalia in plain sight.  John Troxel had left the residence before officers arrived.  Officers went back to Troxels['] tonight.  ~~Norma Troxel came out [and] told officers he is in there tearing up the house.~~  John Troxel is in custody.  ~~Officers only did a walk through search on 07-28-06.~~  <u>Officers did a complete and thorough search on 07-28-06, and they did not limit the scope of that search in any manner.</u>  Officer would like to do a<u>nother</u> complete search now.

The court's conclusions that these statements were false or omitted are based on the evidence at the March 17, 2008, hearing.  Sergeant Chambers testified on direct examination that a complete search of the residence was conducted for drugs and drug paraphernalia on July 28, 2006.  He also testified that he had done a complete search of the "gun room" on July 28, 2006.  He further testified on cross examination that nothing prevented him from doing a complete and thorough search on the 28th, that there was nothing related to the search for drugs and drug paraphernalia that the officers did not do on July 28th, and that they conducted that search "the best we could."  He said that the goal of the search warrant was to search for other drug paraphernalia and drugs.  When asked what led him to believe that more of those items would be found in the house, he responded that there may have been "human error" in the first search.  Sergeant

Chambers also testified that methamphetamine was found in the closed cooler, which was opened only after Ms. Troxel's invalid consent, and was not in plain sight.[4]  The address number also was written incorrectly.  Last, the evidence at the hearing also revealed that Mr. Troxel was not tearing up the house when the officers arrived on July 29, 2006, but instead Ms. Troxel said in the phone call to the officers that he had done so earlier in the morning.

> **c. The court must first determine whether the misstatements and omissions were intentionally made or made with reckless disregard for the truth.**

"[I]t is a violation of the Fourth Amendment to knowingly and intentionally, or with reckless disregard for the truth, include false statements in an affidavit filed in support of a search warrant."  *United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001).  "The defendant bears the burden to demonstrate the affidavit's falsity or reckless disregard for the truth by a preponderance of the evidence." *Id.*  "A reckless disregard for

---

[4] Mr. Troxel also argues that marijuana was not found in plain view, referencing the bag of marijuana that was found inside the cooler.  On cross examination Sergeant Chambers was asked where the marijuana was found on July 28, to which he responded that the dug out was on the workbench and the green bag was in the cooler.  Sergeant Chambers's testimony about the dug out found in plain view on the bench when asked where he found marijuana shows that marijuana was found in plain view. The court does not find that the inclusion of "marijuana" was false.

The Government, on the other hand, in its supplemental motion response argues that because the syringes tested positive for methamphetamine, the statement in the affidavit is technically true.  The court is unconvinced by this argument, as no evidence in this regard was presented at the hearing.  There was no knowledge of that fact by the officers during the search or before the judge who issued the search warrant, nor any indication that residue on syringes could be or was seen by officers.  Regardless, the court does not find that the issue is dispositive in its ruling.

the truth exists when the affiant in fact entertained serious doubts as to the truth of his allegations, ... and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990). "Recklessness may be inferred from omission of facts which are clearly critical to a finding of probable cause." *Id.*

Sergeant Chambers was involved in all facets of the search. He testified that he knew at the time that he requested the search warrant that a thorough and complete search for drugs and drug paraphernalia in the residence as a whole, including the "gun room," had already been conducted. Despite knowing this actual chain of events at the time he requested the search warrant, Sergeant Chambers relayed false statements to the affiant, specifically that only a walk through search was done.[5] Sergeant Chambers's and Detective Valentine's testimony taken together show that these statements were knowingly and intentionally made by Sergeant Chambers. *See generally United States v. Bennett*, 905 F.2d 931 (6th Cir. 1990) ("Because Horn, by his own testimony, admitted that the statements in his affidavit were untrue, statements that clearly are material to the affidavit, we find that the district court's determination that there were no intentionally false statements nor any statements made in reckless disregard for the truth was clearly erroneous."). Had Sergeant Chambers written down exactly what he relayed to Detective Valentine, as evidenced by Detective Valentine's testimony, then it is clear based on his

---

[5] Detective Valentine also testified that he knew the officers did a "complete walk through" and that he had conveyed that to the judge issuing the warrant. A "complete walk through" search is different than the description provided by Sergeant Chambers that a complete and thorough search was conducted. The inherent contradiction in the phrase "complete walk through" also is discussed in this section.

testimony that he knew about the previous search and that the statements were knowingly and intentionally made.  The Government cannot hide behind the ignorance of either officer or an alleged lack of knowledge by the affiant simply because two officers were involved.

Even if the numerous misstatements and omissions were not knowingly and intentionally made, the affidavit was written with reckless disregard for the truth.  This includes both Sergeant Chambers's and Detective Valentine's reckless disregard. Sergeant Chambers omitted facts of which he was aware, particularly that a complete search was already conducted, and "a reasonable person would have known that this was the kind of thing the judge would wish to know."  *Archuletta v. Wagner*, 2007 WL 4269016 (D. Colo. Nov. 28, 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).  Therefore, "such omission can be assumed to be made with reckless disregard for the truth."  *Id.* (also citing *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993); *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991)).

Moreover, Sergeant Chambers, who supplied all of the information to Detective Valentine, the affiant, "neither read nor reviewed the contents of the Affidavit before it was submitted to the . . . judge." *See United States v. Garcia-Zambrano*, 2007 WL 1521577, *4 (D. Colo. May 23, 2007).   Detective Valentine had no involvement in the search or investigation until the search warrant was requested, so he had no first-hand information on which he could rely.  "Verifying that the Affidavit was accurate was especially important given that the Affiant was relying on the knowledge of a third party to assert that probable cause existed for the issuance of a search warrant." *Id.*

Detective Valentine also testified that he knew that a "complete walk through" search had already been performed. At the very least, the inherent contradiction of the phrase "complete walk through" should have alerted Detective Valentine that he needed to clarify what Sergeant Chambers told him. This inherently inconsistent statement evinced obvious reasons for Detective Valentine to doubt the veracity of the allegations. *See DeLoach*, 922 F.2d at 622.

The court also notes the fact that the basis for establishing probable cause in the affidavit is only one paragraph and the fact that it includes numerous false statements and omissions is also indicative of both officers' reckless disregard for the truth. *See United States v. Hammond*, 351 F.3d 765 (6th Cir. 2003) ("The number of falsehoods and half-truths told are substantial and reflect, at the very least, a reckless disregard for the truth."). This is distinguishable from a case where there was an innocent mistake of fact or an officer reasonably misunderstood what events had transpired, causing the affiant to inadvertently include false information. *See, e.g.*, *Tisdale*, 248 F.3d 964 (10th Cir. 2001) (where witness intended to refer to Buick when referring to the trunk of his car but affiant referred to Nissan in the affidavit, court held no reckless disregard).

Based on the foregoing reasons, the court finds that Mr. Troxel has met his burden of proving by a preponderance of the evidence that, at the very least, the affidavit was drafted and statements were relayed to the affiant with reckless disregard for the truth.

### d. The court must also determine whether the misstatements and omissions were material to the finding of probable cause.

"Where false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.  In a case involving information omitted from an affidavit, the existence of probable cause is determined 'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.'" *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing *Franks*, 438 U.S. at 155-56; quoting *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1996).  "An affidavit establishes probable cause for a search warrant to issue if the totality of the information contained therein establishes a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Morgan*, 160 Fed. Appx. 694, 697 (10th Cir. Dec. 20, 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).  "The existence of probable cause is a 'common-sense standard.'" *Id.* (quoting *United States v. Wicks*, 995 F.2d 964, 972 (10th Cir. 1993)).

### i.  Some false statements and omissions are immaterial.

The court finds that the incorrect address number, the statement that methamphetamine was found in plain sight, and the omissions of Detective Valentine's training and experience are not material.

As to the address number, the court is not persuaded that an incorrect number or omission of the correct number in the address was fatal to the finding of probable cause in this case.  There was no threat of confusion because the incorrect address is actually nonexistant.  *See United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) ("A

technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched.") (Quotations omitted).

From the testimony at the hearing, the "methamphetamine" referenced in the affidavit, which actually turned out to be cocaine, was illegally seized from the cooler.[6] Unconstitutionally seized evidence must be excised from the affidavit when determining the existence of probable cause. *United States v. Macias*, 202 F.3d 283 (10th Cir. 1999) (table opinion) (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990)). In light of the reasoning of this court's ruling subsequently discussed, however, the statement that methamphetamine was found in plain sight is not material.

Last, Mr. Troxel argues that the omission of Detective Valentine's qualifications make the search warrant invalid. The court disagrees. While a judge may consider experience and expertise, the court finds no support and the defendant provides none that indicate it is a requirement in an affidavit. *See United States v. Soussi*, 29 F.3d 565, 569 (10th Cir. 1994) ("The affiant's experience and expertise *may* be considered in the magistrate judge's calculus." (emphasis added)). The court likewise is not persuaded by the argument that there was no training or experience attributed to any of the officers involved in the investigation. Detective Valentine was not required to identify or corroborate information or verify reliability when information came only from law enforcement officials. *See United States v. Ventresca*, 380 U.S. 102 (1965) ("Observations of fellow officers of the Government engaged in a common investigation

---

[6] *See also* discussion about methamphetamine found in plain view in note 4, *supra*.

are plainly a reliable basis for a warrant applied for by one of their number."); *United States v. Dan Thanh Nguyen*, 2006 WL 3486993 (D. Minn. 2006).

> ## ii.  The remaining false statements and omissions are material, as they affect the finding of probable cause.

First, the misstatements and omissions regarding the walk through versus complete search were material.  The possibility of "human error," as stated by Sergeant Chambers, in a previous search is insufficient to establish probable cause for a subsequent, successive search.  This situation is distinguishable from those in which officers find some evidence in plain view, stop the search short of it being complete, and obtain a warrant to complete the rest of the search.  In that situation, there is still reason to believe that contraband remains in that place.  Here, because a complete and thorough search was conducted on July 28, 2006, there was no reason to believe that any more or new contraband or evidence would be found.  The initial complete and thorough search dissipated the probable cause, making the second search unreasonable. *United States v. Keszthelyi*, 308 F.3d 557, 571-72 (6th Cir. 2002) (concluding that second search conducted the day after first search was unreasonable: "nothing impaired the ability of the agents to execute fully the warrant at the time of their initial entry . . . the government has not shown that, at the time of the second search, the agents possessed a reasonable basis for believing that undiscovered evidence remained in the home.  Such a showing . . . is critical to establishing the reasonableness of the second search"); *United States v. Morales*, 931 F.2d 900, 1991 WL 70727 (10th Cir. May 2, 1991) (unpublished opinion) ("Courts have looked with disfavor upon repeated searches of the same premises where

the same set of facts constitutes the probable cause for each search.  Where an initial fruitless consent search dissipated the probable cause that justified a warrant, new indicia of probable cause must exist to repeat a search of the same premises pursuant to the warrant.  Probable cause must exist at both points in time.");[7] *cf. United States v. Whitworth*, 856 F.2d 1268, 1282 (9th Cir. 1988) (finding no material omission in search warrant where government "argued persuasively that the consent search in this case was not performed as thoroughly as a warrant-based search . . ., so there still was probable cause for the subsequent search").

Second, had there been a statement about an intervening event between the searches truthfully presented to the issuing judge, the fact that there had been a previous search may not have been material.  That is not the case here.  There was no intervening event set forth in a truthful statement.  The statement, "Norma Troxel came out [and] told officers he is in there tearing up the house," may have been an intervening event sufficient to reestablish probable cause after the first search, but this statement is false.  As previously described, Ms. Troxel called officers prior to their arrival and told them that he had done so earlier in the morning.  She did not come out and tell them upon their arrival, nor was Mr. Troxel presently tearing up the house when officers arrived.

Contrastingly, the facts at the hearing demonstrated there was an intervening event between the searches.  On the morning following the search, Mr. Troxel acted out of

---

[7] An initial fruitless search is analogous to a complete and thorough search and seizure that is not limited in any manner.  In both contexts, probable cause to believe that contraband exists at that place has dissipated by the time of the second search, whether because it never existed or because the officers already confiscated all of it.

control towards Ms. Troxel and significantly damaged the house. These actions, which occurred after the search, were consistent with drug use.    This information likely would have been sufficient to show probable cause to believe that officers would find more or other drugs in the residence on July 29, 2008.

The court, however, in considering whether the information in the affidavit establishes probable cause disregards the false statement altogether.[8] It must be excised, not replaced or corrected with the true facts established at the hearing. *See Franks*, 438 U.S. at 171 (false statements should be "set to one side" to determine if remaining portions constitute probable cause); *United States v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006) ("[The district court's] consideration of new information omitted from the warrant affidavit should have been limited to facts that did not support a finding of probable cause. . . . Allowing the government to bolster the magistrate's probable cause determination through post-hoc filings does not satisfy the Fourth Amendment concerns addressed in *Franks*. . . . [B]ecause the affidavit reviewed by the magistrate did not

---

[8] This is different from the statement about drugs being found in plain view.  In that statement, the court excised only one word in the sentence because the remaining portions are still true.  *See United States v. Elkins*, 300 F.3d 638 (6th Cir. 2002) (statement in affidavit characterized an anonymous caller as a "confidential" informant; district court found that police did receive a tip but it was not confidential; appellate court explained that only "confidential" should be excised but the rest of the true statement should not be stricken). This whole statement is false, so partially excising this sentence is not an option.  This statement comes after "Officers went back to Troxels['] tonight." If the court only excised "came out," so the beginning of the sentence would read "Norma Troxel told officers," it would still appear in light of the previous sentence that she told officers that information *after* their arrival, which is not true.  The court also would have to *correct* "is" to "was" in the latter part of the sentence but because it is an affirmative false statement, the court will not correct the statement with true information, as discussed above.  The whole statement, therefore, is excised.

contain the details in [the] supplemental filing that support a finding of probable cause, we will not consider them." (emphasis added)); *United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) ("[I]n reviewing whether the magistrate had a substantial basis to issue the warrant, we are limited to reviewing the affidavit and cannot consider information from other portions of the record. If we were to 'correct' the affidavit as suggested by the Government, . . . we would . . . allow the Government to receive the benefit of its misconduct. . . . Additional information may be incorporated into an affidavit only if we determine that a government agent made a material omission. . . . Because the alleged misconduct in this case focuses on misstatements by a government agent, rather than omissions, we will not reformulate the affidavit with the 'corrected' . . . information."). *See generally United States v. Soto-Garcia*, 216 F.3d 1089 (10th Cir. 2000) (recognizing that a statement was false because it should have stated that "some" information was corroborated, rather than "all," but concluding that the statement as a whole, not as corrected, was not material to a finding of probable cause).

The affidavit, therefore, shows no intervening event between the July 28 search and the July 29 request for the warrant.  Instead, in the affidavit, the officers requested to search the same place for the same items associated with the same crimes but had no new information to indicate new contraband would be found.  The court finds that the statements pertaining to a walk through search and the statement about what Ms. Troxel said when officers arrived on July 29, 2006, are materially false statements; the omissions that officers conducted a complete search also are material.

**e. The evidence seized pursuant to the state search warrant is suppressed.**

After the redactions of the material false statements and supplementation of the omissions, the court evaluates the following remaining portions of the affidavit to determine if there is a substantial basis from which the issuing judge could make a finding of probable cause.

> On 07-28-2006 Deputy's [*sic*] responded to a domestic call at 14084 NW 2500 RD Williamsburg[,] KS 66093.  Female subject reported that her husband John Troxel had tore [*sic*] up the house as a result of an argument. Female subject Norma Troxel also reported John Troxel hit her in the head with object.  Officers asked consent to search and did a complete search of the residence.  Officers found marijuana, methamphetamine and drug paraphernalia in plain sight.  John Troxel had left the residence before officers arrived.  Officers went back to Troxels['] tonight.  John Troxel is in custody.  Officers did a complete and thorough search on 07-28-06, and they did not limit the scope of that search in any manner.  Officer would like to do another complete search now.

The court finds that the remaining portions of the affidavit do not "contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity," despite the reference to the drugs and drug paraphernalia previously found.  *See Danhauer*, 229 F.3d at 1006.  A complete search and seizure were carried out on July 28, 2006.  The affidavit shows no events after that search and certainly does not show any events that indicate more drugs or drug paraphernalia had entered into the home after that search.  There was no probable cause to believe that drugs or drug paraphernalia, as alleged in the search warrant, would be found in the home since officers already conducted a complete search and seizure for that very same contraband.  To allow officers to go back into a home in this situation would be to allow

officers unfettered access to a place when probable cause has dissipated, a result that would go against the Fourth Amendment's prohibition on unreasonable searches and seizures. *See generally Keszthelyi*, 308 F.3d at 573 ("If law enforcement agents could resume an already-completed search based only on a 'feeling' that evidence remained on the property, there would be no limit to the number of official intrusions that could be carried out pursuant to a warrant."). The court finds that the state search warrant is invalid, and the evidence seized (Exhibits #15, 16) pursuant to that warrant is suppressed.[9]

### III.   The good faith exception does not apply to validate the search conducted pursuant to the invalid state search warrant.

The Government urges that even if there was no probable cause based on the search warrant, the good faith exception should apply. "[W]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause," *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (quotations and citations omitted), because "the exclusionary rule's purpose [is] deterring improper police action, rather than punishing errors made by magistrates." *United States v. Gonzalez*, 399 F.3d 1225, 1228 (10th Cir. 2005). The good faith doctrine is not boundless,

---

[9] The evidence seized pursuant to the invalid warrant was found in the "gun room," so even if Ms. Troxel consented to the search on July 29, 2006, that consent was invalid as to that room, as discussed in this court's previous Memorandum and Order (doc. 29).

however, and does not apply where there is a violation under *Franks*.  *Id.* at 1229 (explaining that there are four contexts in which an "officer cannot be found to have relied on a warrant in good faith," including "where the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" (internal quotations omitted)); *United States v. Orr*, 864 F.2d 1505, 1508, n.3 (10th Cir. 1988) ("The *Leon* good faith exception does not apply to search warrants granted on the basis of a recklessly or intentionally false affidavit that violates *Franks*.").  Thus, because the search warrant cannot be upheld under *Franks*, the good faith doctrine has no application.

**IV.** **Evidence obtained pursuant to the federal search warrant is not fruit of the poisonous tree.**

Federal Agent Chris Concannon, the affiant, testified that the gun vault was the focal point of the federal search.  He based the federal search warrant in large part on the police report that Sergeant Chambers provided, as well as from federal agents' questioning of Ms. Troxel.  That police report was not introduced as evidence at the hearing.  Mr. Troxel argues in his Motion that because the searches by the state officers were illegal and because the federal search warrant was obtained as a result of the state investigation, the evidence obtained pursuant to the federal search warrant should be suppressed as fruit of the poisonous tree.

"A causal connection between information gained during an illegal search and subsequently discovered evidence does not automatically require exclusion of the

evidence. Evidence is admissible despite the original illegality if the connection has become so attenuated as to dissipate the taint of the illegal search. In determining whether exclusion is proper, the correct inquiry is not would the evidence have been discovered but for the illegal conduct. Rather, the court must determine if the evidence sought to be admitted 'has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Larson*, 1995 WL 716786 (D. Kan. Nov. 16, 1995) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); also citing *Nardone v. United States*, 308 U.S. 338, 341 (1939) for attenuation doctrine).

Federal agents obtained the federal search warrant by means sufficiently distinguishable to be purged of the primary taint of the state officers' illegal searches. First, the entirety of the state searches was not illegal.  Second, state officers legally found drug paraphernalia and marijuana in plain view prior to any illegal search.  At the same time that officers were legally in the "gun room" and found items in plain view, the officers saw a large, locked gun vault in the same room.  The officers also were legally present inside the residence pursuant to Ms. Troxel's consent when Ms. Troxel made statements to officers. Mr. Troxel also was legally arrested.  Upon his release from custody, Mr. Troxel accompanied the state officer to his home and unlocked the safe, revealing over thirty firearms and ammunition.  Ms. Troxel also provided several statements to the federal agents about Mr. Troxel's drug use and the firearms in the gun vault.  Based on the combination of all these facts known, the federal search warrant was not obtained by exploitation of the illegal searches by the state officers.  Rather, the legal

search by state officers and the subsequent statements and actions by Ms. Troxel and Mr. Troxel gave rise to probable cause via means sufficiently distinguishable from those illegal searches.

This finding also is consistent with the evaluation of the validity of the federal search warrant if all unconstitutionally obtained information is excised from the warrant. *See United States v. Macias*, 202 F.3d 283, 1999 WL 1244469, *2 (10th Cir. 1999) (table opinion) ("An affidavit containing . . . unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990)); *see also United States v. Karo*, 468 U.S. 705, 719 (1984) (discussing the product of an illegal search, explaining that "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid").  As discussed in the preceding paragraph, several pieces of legal, untainted evidence were seized or obtained by federal or state officers and included in the federal search warrant as a basis for a probable cause finding: narcotics evidence and the gun vault were seen in plain view pursuant to a legal search, Mr. Troxel's arrest and subsequent unlocking of the gun vault to reveal numerous firearms to the accompanying officer, and Ms. Troxel's statements and other evidence given to officials.  Based on this evidence, even if the illegally seized evidence was excised from the warrant, the magistrate judge still had a substantial basis from which to make a finding of probable cause that evidence of the

crime of being an unlawful user in possession of a firearm, the crime alleged in the federal search warrant, could be found in the residence.

### V.   Items found and turned over by Ms. Troxel independent of the searches are not suppressed.

On July 30, 2006, Ms. Troxel called Sergeant Chambers and told him she found a glass pipe.  He went to the home and collected the pipe as evidence.  At some point afterwards, Ms. Troxel again called Sergeant Chambers and told him she found a syringe in a glass jar while she was cleaning the house. Sergeant Chambers again recovered it as evidence.

The Government claimed in its response that since the previous Memorandum and Order did not indicate whether Government Exhibits 17 (a syringe in a jar) and 18 (a glass pipe) were suppressed, it assumed that those items are admissible at trial.  Mr. Troxel responded in his supplemental response that items are inadmissible because the Government did not put on any evidence at the hearing concerning the issue of whether the Government coerced, directed, or dominated the actions of Ms. Troxel, such that her actions could be considered state action and subject to the requirements of the Fourth Amendment.  *See Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989) ("But if the government coerces, dominates or directs the actions of a private person, a resultant search and seizure may implicate the guarantees of the fourth amendment. . . . In deciding whether a private person has become an instrument or agent of the government, two important inquiries are: 1) whether the government knew of and acquiesced in the

intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." (quotations and citation omitted)).

Mr. Troxel mentioned in passing in his Motion to Suppress that Ms. Troxel had turned over items to the law enforcement officials after the state searches were conducted at the house.  *See* Motion to Suppress Evidence and Memorandum of Law in Support, at 8, ¶ 22; (doc. 14).  The rest of the paragraph relates to the letters, subsequently discussed in Part VI. There is no mention as to what those items were or any details regarding Ms. Troxel turning over the items. Mr. Troxel made no other mention of these items in the Motion and provided no argument as to why those items should be suppressed.  The defendant also did not produce at the hearing any evidence showing there were material facts in dispute about these items turned over by Ms. Troxel.   The Government did not address the legality of the officers' receipt of the items in its response to the Motion to Suppress or at the hearing.   In response to a separate objection, the Government explained they were introduced into evidence at the hearing to give a complete picture of all the items recovered throughout the investigation.

"In motions to suppress, the defendant usually bears the burden of proof."  *United States v. Jackson*, 213 F.3d 1269 (10th Cir. 2000), *vacated on other grounds*, 531 U.S. 1033 (2000); *see also United States v. Crocker*, 510 F.2d 1129, 1135 (10th Cir. 1975) ("It is fundamental that on a motion to suppress there must be a foundation in fact for the legal result. Logic dictates that a pre-trial Motion to Suppress filed by an accused does in fact cast the burden upon the movant to present facts necessary to sustain his position.") (quotation marks and citations omitted).  "The defendant bears the burden of showing

there are material facts in dispute, and an evidentiary hearing is only required when the motion to suppress "raise[s] factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Glass*, 128 F.3d 1398 (10th Cir. 1997).

The court finds that Mr. Troxel did not meet his burden to show that material facts were in dispute. He did not raise sufficiently specific, detailed factual allegations to show he was contesting the Government's use of the items turned over by Ms. Troxel. A defendant cannot rely on a most generalized statement that it seeks suppression of all items that have come from multiple places, seizures, and persons, and expect the Government to guess which items are disputed and the theory on which the defendant seeks suppression of each of these items, all recovered through different means. This is particularly true where as here in the Motion to Suppress the defendant only pointed to evidence "seized over a period of several days and pursuant to a variety of methods including the concepts of consent and plain view," but never mentioning anywhere that the contested evidence included that which was turned over by Ms. Troxel. Mr. Troxel cannot raise a potential issue in the supplemental response almost four weeks after the hearing and months after filing the Motion to Suppress. Even if this Court decided this aspect of the motion on the merits, the evidence before the court shows that Ms. Troxel initiated the phone calls to the sergeant and voluntarily turned over those items, indicating the Fourth Amendment has no application to these items. *See Pleasant*, 876 F.2d at 797 ("[T]here is no conduct foreclosed by the fourth amendment when a private

person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor."). To the extent that Mr. Troxel now claims that the Motion to Suppress should be construed to have sought suppression of Government Exhibits 17 (a syringe in a jar) and 18 (a glass pipe), it is denied.

**VI.** **The Government did not overcome the presumption of confidentiality under the marital communications privilege.**

"[E]ither spouse may assert [the marital confidential communications privilege] to prevent the other from testifying to confidential communications made during marriage." *United States v. Jarvison*, 409 F.3d 1221, 1231 (10th Cir. 2005). Letters written between spouses can qualify as a "communication." *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) ("There is no dispute that the letter [the wife] wrote to her husband was a communication. . ."). Mr. Troxel asserted that the court should preclude the Government from introducing two letters, written while Mr. and Ms. Troxel were married, into evidence at trial pursuant to Federal Rule of Evidence 501. *See* Motion to Suppress Evidence and Memorandum of Law in Support, at 2, 8, ¶ 3, 4, 22; doc. 14). The undersigned also confirmed with defense counsel at the hearing that part of the defendant's motion was based on spousal privilege.

In its Supplemental Briefing Regarding Motion to Suppress Evidence (doc. 32) the Government conceded that the notes qualify as communications and that the Troxels were married at the time they were written. The Government, however, challenges that the communications were not intended to be confidential. Mr. Troxel responded that the

29

communications were intended to be confidential and that because the Government failed to present any evidence on the issue at the hearing, the Government did not meet its burden of proof.  Defendant's Supplement to Motion to Suppress Evidence, at 10-11; (doc. 31).

"[M]arital communications are presumed to be confidential," but "that presumption may be overcome by proof of facts showing that they were not intended to be private."  *Pereira v. United States*, 347 U.S. 1, 6 (1954) (quoted and cited by *United States v. Wade*, 203 Fed. Appx. 920, 2006 WL 3059929 (10th Cir. Oct. 30, 2006)).  The Government has not rebutted the presumption of confidentiality.  The Government did not introduce the letters or any other evidence (either testimony or exhibits) relating to these letters at the hearing.  It also did not produce any evidence relating to Mr. Troxel's waiver of that privilege.  The court, therefore, has no "proof of facts" before it that could overcome the presumption.   The Government challenged the confidentiality of the communications for the first time in its supplemental brief.  These statements do not qualify as evidence, so there is no "proof" before the court.  The court grants Mr. Troxel's motion to the extent that it sought to prevent the Government from introducing "private letters that Mr. Troxel and his wife wrote to each other during the course of their marriage which alludes to alleged drug use by [Mr. Troxel]."  *See* Motion to Suppress Evidence and Memorandum of Law in Support, at 2, ¶ 3; (doc. 14).

## VII.   **Conclusion**

Based on the discussion in this Memorandum and Order, as well as the court's previous Memorandum and Order (doc. 29),  the following items are admissible: Blue Bunny bucket with syringes (Government Exhibit 6); brown dugout (Government Exhibit 7); syringe in a jar (Government Exhibit 17); glass pipe (Government Exhibit 18); and evidence seized pursuant to the federal search warrant.   The following items are inadmissible: little white bowl with cotton (Government Exhibit 8); syringes (Government Exhibit 9); rolling papers (Government Exhibit 10); rolling machine (Government Exhibit 11); bag of green vegetation and sifter (Government Exhibit 12); pipe and residue (Government Exhibit 13); Camel tin can (Government Exhibit 15); buckskin container with pipe (Government Exhibit 16); and letters written between Mr. and Ms. Troxel during their marriage referenced in Mr. Troxel's Motion to Suppress, paragraphs 3, 4, and 22.

**IT IS ORDERED BY THE COURT** that Mr. Troxel's Motion to Suppress (doc. 14) is GRANTED in part and DENIED in part as stated herein.

**IT IS SO ORDERED.**

Dated this 17th day of June, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge